Good morning, your honors. May it please the court. There is only one question currently before this court on appeal. And that is whether Ms. Reid filed her civil action within the time limit permitted by the statute of limitation. And she did do so. The district court's decision to the contrary should be reversed because the district court ignored JMU's own rules as to when a decision in a Title IX matter becomes final. It ignores JMU's own interpretation of those rules that was JMU's pre-litigation. And because the district court misunderstood the distinction between a direct and collateral appeal. All right, let me just get a little bit of groundwork on this. The cause of action arises when there's injury, right, and the person knows of it. Correct. And your argument is that there is an injury until James Madison University's final decision is issued because it could have been reversed and then there would be no injury. Correct. And that in this case, the vice president is the final arbiter and it was filed within the time of the vice president's decision. Also correct. All right. But to elucidate that point, Your Honor, the injury here is, there's numerous injuries, but the key. Is that really, does it vary based on your claims? In other words, a discrimination claim, I understand your argument completely. Your due process claim, do you have to fully understand your injury in order to have inquiry notice that triggers the statute? Just a moment, I was actually going to address due process right this moment. And Supreme Court just last term stated that if your argument, if your claim is denial of due process, that injury is not complete when there's a deprivation of substantive right, but it's actually complete on the denial of the process. But do you have to have a complete injury to start the statute? I mean, certainly, I mean, if you're in a wreck in a car and you know someone hits you in the back or rear-ended you, you may not, your injuries may not be complete for a long time after that. But you got inquiry notice and the statute starts. Correct. But as Supreme Court, same case, Supreme Court is Reed v. Gertz. It's 598 U.S. 230. That it actually makes sense to start the statute of limitation when the state appellate process, or in this case, the university appellate process, has run because that process may ultimately make the 1983 suit unnecessary. And so you don't know when your deprivation of due process is complete. Does that presume, just following up on Judge Quattlebaum's question, that if the vice president had gone your way, then the due process violations would be cured? What if he said, you're right? He said the process is right, I'm sending it back. Does that cure the due process claims you have? It certainly moves them. Both parties had the right to appeal. So it wouldn't have been final until, arguably, your argument, until the appeal period ran per the university's policy. The other person, even if you won, the other person could have appealed. So it would not have been final based on the university's policy. Exactly right, Judge Thacker. I'm going to, Judge Quattlebaum, to your point. So you can imagine a hypothetical where Ms. Reed is completely exonerated by the dean. There's no violation here. Go forth and do your work. And then the complainant appeals to the provost. And the provost says, you know what, no. This sounds terrible and I'm going to impose some sort of sanction. And so it's only at that point that Ms. Reed would know both, is she liable? And B, what kind of price she has to pay for her violation. Yeah, and the Supreme Court case may do it. And I get that argument, but maybe we just look at things differently in due process law. But most of the rest of the law, you don't require complete awareness of the full extent of your injuries or lack of injuries. I mean, in order to start the statute. And anyway, I don't think that applies to the discrimination claim. I get the argument until it's final. It makes sense there. It's a little bit different than the other. It may not be enough to change things. But it seems like we're just almost requiring complete banality to start the statute when you have inquiry notice of the due process stuff earlier. Maybe the law, maybe the way it goes. And I understand the concern, but I think the countervailing concern is that federal courts are busy. And they shouldn't be burdened with litigation if something can be resolved in the state administrative process beforehand. And to Judge Nemarch, to your question, would the due process violation have been cured had the provost gone our client's way? I think we might still be slightly bitter about having to be dragged through this process, but ultimately. Well, that goes to that point, then, that maybe you were injured earlier. In other words, if your due process, if the full process here would have been appropriate if the vice president had gone your way, even though he refused to hear somebody or earlier there was no cross-examination, then it seems it's rendered moot. But if you're now saying the earlier process caused injury, even if he went your way, now you've got a limitations problem. I think my first question here is the whole focus isn't necessarily on the finality. The focus has to be on injury and when you're perceived of an injury and could bring suit. Sure, and I certainly do not mean to imply we would have injury had the vice president gone our way. I'm saying, look, Ms. Reed could be personally bitter because it's never pleasant to go through this sort of process. But it's all a single process. And had vice president gone our way, whatever failings there may have been in the committee stage or the dean stage, because it's a single process, only the outcome matters and whether or not you were ultimately heard and your evidence was ultimately considered and you were able to present and respond to charges with sufficient information as to what those charges contained. So you may still be unhappy that you had to go and take time out of your day and respond to incorrect allegations, but the violation occurs when you get ultimately denied due process. So I think I understand your answer to that. It's that you might, in a non-legal sense, not like it, but you have no legal claim that you could bring until the final decision. Correct. Even under the due process. Correct. So you could not have, even if it went your way, brought a legal due process claim based on what you had to go through. Even a declaratory judgment claim that getting witness statements without any information to know what to do about them, you're saying you couldn't? That's correct because we would run headfirst into the doctrine of exhaustion of administrative remedies. So we would come in and say, oh, I have to go answer this complaint in the committee and they're a poorly constituted committee and they're going to do all these things to me. I think this court's response would be, correct response would be, saying just wait until you go through this process because maybe all these things you're alleging will not happen. Maybe they'll just look at the complaint and say there's no there there. Or maybe they won't. And that's why we have to run through the whole process to see where the injury is actually lying. Okay. That, I think, is ultimately the nub of our case. And unless there's any further questions from the court, I'm happy to answer them. All right, thank you, Mr. Doan. Ms. Maley? Good morning, Your Honors. May it please the Court, I'm Erica Maley on behalf of the University Defendants. The district court correctly held that Ms. Reed's claims are untimely. A claim accrues- Can I ask you a hypothetical question? I know it pulls you right into the argument and I want to hear it all. But if the committee, after the committee ruled in this case, there was a level to go to the dean and then a level to go to the vice president. So after the committee ruled against the plaintiff, could she have gone into court and sued for a violation of a due process? I think potentially she could have. That, I believe, is a much closer question. Before the review? Yes, I think potentially she could have. And I think it depends on whether you conceptualize the injury as being the inadequate process or the inadequate process plus a determination that she was responsible for sexual misconduct. But, you know, in a state university, they have a whole process with all kinds of levels of review. And somebody is saying, I was not treated fairly in that process. If the vice president said, I agree, you were not treated fairly, we're going to do it over again. It seems to me that we ought to start with a presumption that you ought to finish that state process to get to the final university decision before you go to court. And that we might kick it out if it were filed earlier. I agree completely with your earlier remark that the question is really one of injury and not a finality. Of course it is. And I'm just suggesting that maybe there might not have been any injury if the vice president had said, yeah, we had a lot of flaws in this process. They didn't follow some of our procedures. She had a couple of witnesses they denied and so forth. I'm going to send it back and we're going to start all over. No injury, right? I think that depends on the circumstances of the particular case. In some instances, you might not have an injury if the initial decision is reversed and the case has to go back for a new hearing. In other instances, you might. And I think the Supreme Court's decision in Burlington Northern that's referred to in the reply brief is a good example of that. In that instance, an employer was found to have committed insubordination and was suspended without pay for a month. And she appealed that up to the higher management inside her employer. And the higher management agreed with her and says, you weren't insubordinate, reinstated her, gave her back pay, and the employer argued, well, there's no injury, and the Supreme Court disagreed with that. They said there's still an injury. Having to go a month with no pay is an injury that wasn't necessarily completely remedied by the back pay and you still have a claim. And I think it's quite notable. Did the university here take the action that the dean recommended while the appeal was pending? The action of placing a letter of reprimand? I'm not certain of when the reprimand was entered. Probably after the decision was final. In terms of when the vice president was? I'm not certain when there was a reprimand. But I think it's also significant that the claims do not entirely flow from the reprimand. Ms. Reed is also contending that she was denied a promotion based on the Title IX process. And she's also contending that she was constructively discharged. And all of that happened even before the dean's decision was issued. If the Supreme Court in Ricks tells us we have to look at when it was reasonably apparent that it was a final decision, your own policy says if you appeal, it's the vice president's decision that's final. And y'all wrote that. I mean, you know, it seems to, it's kind of odd, but it seems to determine, it seems to make finality dependent on what the plaintiff does or doesn't do. But since you wrote that and says it's final then, and Ricks tells us that's when we're supposed to do it, how is it not final there? I mean, at least on discrimination claim, I don't even, I'm not sure I understand how it couldn't be. Well, respectfully, Judge Quattlebaum, finality is a little bit of a red herring. And Ricks does not say that the statute of limitations accrues when a decision is final. They say if an alleged wrongful act is a decision, then the statute of limitations accrues when the decision is made. And it says it has to be an official decision. It can't be a tentative decision. But it never says it has to be a final decision. But if it's not a final decision, it may not be a decision at all that you can count on until it becomes final. But in the Ricks case, the board of trustees specifically said, we're going to revisit this decision if your grievance is upheld. And so it wasn't final in the sense that the university said, this is our decision, nothing that could happen in the future could change this decision. There was a further review process that was available. You provided that, too, to the vice president. That's right, to the vice president. And it is analogous to the grievance process that was available in Ricks. And Ricks held that the grievance process did not delay approval. In Ricks, there wasn't a language in the decision that said recommended and suggested. In Ricks, the decision, there was a recommendation by a faculty committee and then a recommendation by a faculty senate. And then the board of trustees made the decision to deny tenure. That's right. And the board decision is where things became the time that the statute runs. And they said the grievance committee was collateral. Or it may be that they didn't use collateral. I can't remember my cases now. But here, Aguirre's decision says recommendation. I grant you the first page on liability or violation looks more definitive. But the document says recommendation, and at the bottom it says suggestion. That sounds pretty far from making a decision that things are settled. The recommendation and suggestion language only goes to the chosen sanction. It does not go to the finding that she violated university policy and committed misconduct. And she never challenged the sanction, which was the lightest possible sanction. I know, but it doesn't go to the actual result. It goes to the question of finality. And whether it's an open question, whether it really was a decision. And, of course, in Rick's, the analogy that you try to make is not very good because they discounted the grievance procedure, which was collateral to the actual decision-making. Here, the decision-making is clearly a hierarchy that ends with the vice president. The vice president had an appeal was available to the vice president. That appeal was both discretionary and extremely limited. Sure, but still it's available. It's part of the process. And in this case, it was invoked. I don't believe that Rick's should be read as trying to draw a line between a direct appeal and a collateral appeal versus drawing a line between when is a decision made and what is an internal review process that could potentially lead to the reversal of the decision. And here, there is clearly a decision of responsibility in very definitive terms. He says, I find for the complainant, Ms. Reed is held responsible for committing sexual misconduct. Her relationship violated university policy. Nothing about that is in any way tentative. And the vice president's appeal was not to review that determination. The only grounds for appeal were due process, the sanction, or new evidence. And so it was not an instance where the vice president had to sign off on the decision at all. It was only if the parties chose to take an appeal. And even if an appeal was taken, the vice president did not have the authority to do any type of full de novo review of the finding of whether there was a violation of policy or misconduct or not. And that shows that in this process, the dean was the decision maker. The dean was the official charged with making a determination of whether there had been misconduct, whether university policy was violated or not. And that does make the dean in the same position as the board of trustees was in Rick's. He was the decision maker. And so the statute of limitation accrues no later than the date of his decision. And we'd ask that the decision be affirmed. Thank you. Thank you, Ms. Mailey. Mr. Doan, anything further? Yes, thank you, Honor. Just a couple of quick points. First, let me begin where my learned opposing counsel left off on the notion that the vice president had no authority for de novo review. That is plainly incorrect based on the reading of the university's own rule. Section 6.6.8.20, which is on JA 175, says vice president may uphold the decision below, reject it, or modify it. It doesn't say how it can modify it. It has plenary power to modify it in any which way it sees fit. So this idea that there's no authority for de novo review seems to be inconsistent with the language itself. And then the second point about whether or not the appeal to the vice president here is or is not analogous to the reconsideration in RICS, I don't think it's analogous to reconsideration. It's rather analogous to the review by the board. As a faculty member myself, I know how we grant tenure. We evaluate it in first a small subcommittee. Then the entire School of Law faculty gathers and votes on it. That's a recommendation to the dean, which is then a recommendation to the president, who then makes a final decision. You can lose at any one of those steps, but the ultimate authority rests with the president, and you have no cause of action. You have nothing to complain about until the president gives you thumbs up or thumbs down. And if he gives you thumbs down, then you can ask for reconsideration. That would be analogous to RICS, whereas this stepwise process is analogous to what happened here. So that's why it's all part of the same process. It's not reconsideration. The decision wasn't final until Provost Goldman rendered it. So with that, unless there's any further questions, we'll wrap up. Thank you very much. Thank you. There's no cross-appeal. We'll come down and greet counsel. Let's adjourn court, sign and die.
judges: Paul V. Niemeyer, Stephanie D. Thacker, A. Marvin Quattlebaum Jr.